UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

A. C. UPSHAW,

      Plaintiff,

v.                                                  Case No:   2:15-cv-74-FtM-DNF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## OPINION AND ORDER

Plaintiff, A. C. Upshaw, seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("SSA") denying his claim for a period of disability and

disability insurance benefits ("DIB").  The Commissioner filed the Transcript of the proceedings

(hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed

legal memoranda in support of their positions. For the reasons set out herein, the decision of the

Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the
ALJ's Decision**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve

months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B.  Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that he is not undertaking substantial gainful employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments.  *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled.  20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii).  If he meets this burden, he will be considered disabled without consideration of age, education and work experience.  *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work.  *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work.  20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f).  If the claimant can still perform his past relevant work, then he will not be found disabled.  *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989).  There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert.  *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C.  Procedural History

On June 29, 2011, Plaintiff filed an application for a period of disability and disability insurance benefits alleging disability beginning July 1, 2006. (Tr. 125-129).  Plaintiff's application was denied initially on August 25, 2011, and on reconsideration on September 22, 2011. (Tr. 70, 76).  A hearing was held before Administrative Law Judge Ronald Robins (the "ALJ") on June 14, 2013. (Tr. 41-64).  At the hearing, Plaintiff amended his alleged onset date to December 16, 2009.  (Tr. 45).  On July 19, 2013, the ALJ issued a partially favorable decision finding that Plaintiff was disabled from December 16, 2009, through August 16, 2011, but not disabled thereafter.  (Tr. 7-24).  Plaintiff appealed the ALJ's decision and the Appeals Council denied Plaintiff's request for review on December 5, 2014.  (Tr. 1).  Plaintiff initiated the instant action by filing a Complaint (Doc. 1) on February 6, 2015.  The parties having filed memorandum in support of their positions, this case is ripe for review.

### D.  Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 16, 2009, the date Plaintiff became disabled.  (Tr. 15). At step two, the ALJ found that from December 16, 2009, through August 16, 2011, the period during which Plaintiff was under a disability, Plaintiff had the following severe impairments:

thoracolumbar spine scoliosis, with chronic back pain, lower right tibial fracture secondary to gunshot wound, major depressive disorder with psychosis, posttraumatic stress disorder (PTSD) chronic, and alcohol and cocaine dependence in remission. (Tr. 15). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15).

The ALJ found that Plaintiff, from December 16, 2009, through August 16, 2011, had the residual functional capacity ("RFC") to:

> perform, exertionally, the full range of medium, light, and sedentary work as defined in 20 CFR 404.1567(a) except that the combination of claimant's impairments prevents the claimant from working an 8-hour workday for 40 hours a week or any other comparable work schedule. Furthermore, the claimant has moderate restrictions with regard to social functioning and marked restrictions with regard to concentration, persistence, and pace. Moderate is defined as more than a slight limitation but the individual is still able to function satisfactorily. Marked is defined as a serious limitation and there is substantial loss in the ability to effectively function.

(Tr. 16). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a carpet cleaner, dock builder, or correction officer from December 16, 2009, through August 16, 2011. (Tr. 17-18). At step five, the ALJ found that from December 16, 2009, through August 16, 2011, there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed given his age, education, work experience, and RFC. (Tr. 18). The ALJ found that from December 16, 2009, through August 16, 2011, Plaintiff was under a disability as defined by the Social Security Act. (Tr. 19).

The ALJ found, however, that Plaintiff had a medical improvement on August 17, 2011, which resulted in an increase of Plaintiff's RFC. (Tr. 20). The ALJ found that Plaintiff, beginning August 17, 2011, had the RFC to "perform the full range of medium, light and sedentary work as

defined in 20 CFR 404.1567(c)" and "the ability to perform simple tasks and simple directions through all exertional levels." (Tr. 21). The ALJ found that even with this increased RFC, Plaintiff was unable to perform his past relevant work. (Tr. 23). The ALJ applied the Grids and found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform since his medical improvement on August 17, 2011. (Tr. 23). The ALJ concluded that Plaintiff's disability ended on August 17, 2011. (Tr. 24).

## II.     Analysis

Plaintiff raises two issues on appeal: (1) whether the ALJ erred by mechanically applying the Grids to find that Plaintiff is not disabled; and (2) whether the ALJ erred by failing to give great weight to the finding of the Department of Veterans Affairs ("VA") that Plaintiff was 100% disabled. (Doc. 27 p. 2). The Court addresses each issue in turn.

### a)   Whether the ALJ erred by mechanically applying the Grids to find that Plaintiff is not disabled.

Plaintiff argues that the ALJ erred by applying the Grids because Plaintiff's RFC includes nonexertional limitations and, therefore, the ALJ was required to call a vocational expert to establish whether Plaintiff can perform work which exists in the national economy. (Doc. 27 p. 7). In addition, Plaintiff argues that the ALJ's decision was not supported by substantial evidence to the extent that Plaintiff had additional symptoms which the ALJ failed to consider. (Doc. 27 p. 7). In response, Defendant argues that the ALJ properly applied the Grids and that the ALJ's finding that there are significant jobs that Plaintiff can perform in the national economy is supported by substantial evidence. (Doc. 28 p. 4-5).

As noted above, there are two avenues at step five by which the ALJ may determine whether there is work in the national economy that a claimant can perform: (1) using the Grids or (2) by relying on the testimony of a VE. *Phillips*, 357 F.3d at 1239-40. An ALJ cannot rely

exclusively on the Grids when a claimant is unable to perform a full range of work at a given residual functional level or when a Plaintiff has nonexertional impairments that significantly limit the claimant's basic work skills. *Id*. at 1242. "Significantly limit basic work skills" means that the limitations prohibit a claimant from performing a "wide range" of work at a given level. *Id*. at 1243. If a claimant cannot perform a full range of work at a given level or has nonexertional impairments that prohibit a wide range of work at a given level, the ALJ may use the Grids as a framework, but must also introduce independent evidence, preferably through a VE's testimony, of the existence of jobs in the national economy that a claimant can perform. *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

In this case, Plaintiff has failed to show that his nonexertional limitations prevented him from performing a wide range of work at the medium, light, and sedentary levels. The Grids take administrative notice of the number of unskilled jobs at the various exertional levels that exist throughout the national economy. 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b). Unskilled work involves work that needs little or no judgment to do simple duties that can be learned on the job in a short period; understanding, remembering, and carrying out simple instructions; making simple work-related decisions; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work conditions. *See* 20 C.F.R. § 404.1568(a); Social Security Ruling (SSR) 96-9p; SSR 85-15. As the Grids take into account unskilled jobs, which are described by the regulation as involving only simple duties and requiring simple instructions, it is clear that Plaintiff's inability to perform detailed or complex tasks does not preclude him from perform a full range of work at the medium, light and sedentary exertional levels. For this reason, the Court finds that the ALJ did not err by applying the Grids to find that Plaintiff could perform other work after August 16, 2011.

In addition, the Court finds that the ALJ did not err by failing to consider additional "symptoms" as alleged by Plaintiff.  In his brief, Plaintiff cites to the one-time psychological evaluation performed by Nancy Kelly, Psy.D., on August 16, 2011, as one example of evidence showing symptoms not considered by the ALJ.  (Tr. 545-48).  Dr. Kelly found that Plaintiff could follow and understand simple directions and perform simple tasks independently, maintain attention, a regular schedule, and learn new tasks, would have mild difficulties performing complex tasks independently, would be able to make appropriate decisions, and would have difficulties relating to adequately with others and appropriately dealing with stress.  (Tr. 547).  Dr. Kelly found that the "results of the examination appear to be consistent with psychiatric symptoms that may significantly interfere with the claimant's ability to function on a daily basis."  (Tr. 547).

Contrary to Plaintiff's argument that the ALJ ignored certain "symptoms" of Plaintiff, the ALJ discussed Dr. Kelly's examination findings at length and accorded her opinion great weight.  (Tr. 21, 23).  Dr. Kelly's findings support the ALJ's RFC finding that Plaintiff can perform simple tasks and simple directions through all exertional levels.  The Court finds no basis to remand for the ALJ's treatment of Dr. Kelly's findings.

Plaintiff also cites to medical records from February 15, 2012, and April 18, 2013, as support for his claim that the ALJ did not consider all of his symptoms.  The record shows that Plaintiff was seen by a psychologist on February 15, 2012, and it was noted that Plaintiff reported that his sleep was poor and that he had depression, irritability, and anger.  (Tr. 571-72).  Records from April 18, 2013, indicate that Plaintiff was having trouble sleeping because he ran out of Seroquel.  (Tr. 636).  Plaintiff reported that he was having daytime somnolence at the time and a broken finger due to physically fighting with his neighbor.  (Tr. 636).

The Court finds that these medical records do not warrant remand.  First, nothing in these records contradicts or undermines the ALJ's RFC finding and reliance on the Grids.  Second, these records are after his date last insured of September 30, 2011, and are of little relevance to whether Plaintiff was disabled before the expiration of his insured status.  *See* 42 U.S.C. §§ 416(i)(3), 423(a), (c); 20 C.F.R. §§ 404.101, 404.130, 404.131; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.").

### b) Whether the ALJ erred by failing to give great weight to the finding of the Department of Veterans Affairs that Plaintiff was 100% disabled.

Plaintiff argues that the ALJ erred by failing to give great weight to the VA's finding that Plaintiff was 100% disabled.  (Doc. 27 p. 8-9).  Plaintiff contends that while the ALJ was not bound by the VA's determination, the VA's determination was still entitled to great weight, and if the finding is rejected, the ALJ was required to explain the basis of the rejection.  (Doc. 27 p. 9).

In response, Defendant argues that the ALJ properly considered evidence from the VA and found that Plaintiff was disabled for the closed period beginning December 16, 2009, through August 16, 2011, a period that encompasses the period addressed by the VA's evaluation.  (Doc. 28 p. 11).  Defendant argues that the VA's evaluation does not establish that Plaintiff was disabled after August 16, 2011, the period the ALJ found Plaintiff's disability ended.  (Doc. 28 p. 12).

The decision of another governmental agency about whether a claimant is "disabled" is based on the rules of that agency and is not binding on the Commissioner.  20 C.F.R. § 404.1504.  Nevertheless, the Eleventh Circuit has held that "'[t]he findings of disability by another agency, although not binding on the [Commissioner], are entitled to great weight.'"  *Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th

Cir. 1983)).   The Eleventh Circuit has concluded that an ALJ may make an implicit finding regarding a VA disability rating.  *See Kemp v. Astrue*, 308 F. App'x 423, 426 (11th Cir. 2009).

In his opinion, the ALJ addressed the evidence from the VA and specifically noted the VA's 100% disability determination:

> A review of the claimant's medical records indicates an extensive history of mental health treatment by the VA clinic.  On December 20, 2010, the Department of Veteran Affairs (VA) found service connection for post-traumatic stress disorder (PTSD) with an evaluation of 100% effective December 16, 2009 (Ex. 10F).  Treatment records from the VA clinic indicate that claimant has been abstinent from alcohol and cocaine abuse since September 2012, when he initiated outpatient psychiatric care with the VA.   The claimant continued with therapy and medication management for the treatment of major depressive disorder with psychosis and PTSD.   He was placed on an anti-psychotic and anti-depressant medication regimen including Quetiapine and Mirtazapine.  Medication side effects included drowsiness and fatigue.  He complained of variable depressed mood every day, with decreased energy, motivation, interests, self-esteem, concentration, and libido.  He had episodic suicidal ideation without gestures, wish, or intent.  He experienced periodic paranoia with auditory and visual hallucinations at night.  He traced his depression to his constant low back and leg pain, his inability to work, his loss of access to his children, the murders of both his brother and sister, and the 2003 murders of a female coworker and inmate in a correctional facility where he worked and for which he felt was responsible. (Ex. 8F).

(Tr. 16-17).   In addition, the ALJ acknowledged the opinion of Plaintiff's VA psychiatrist, Alexander Rodriguez, M.D., that Plaintiff was not able to work due to a combination of back pain and psychiatric problems, primarily "worsening depression," and Dr. Rodriguez's finding that Plaintiff is "severely limited psychosocially due to his mental conditions and is unable to seek or sustain work due to his severe anxiety and depression, including a disorder of thinking which results in difficulty relating to others, concentrating, and completing many tasks." (Tr. 17).  The ALJ accorded great weight to the opinion of Dr. Rodriguez for the closed period of disability from December 16, 2009, through August 16, 2011.  (Tr. 17).  As for the time period after August 16,

2011, the ALJ noted that the "[m]ental health treatment records from the VA clinic indicate that claimant's mental conditions significantly improved with medication management." (Tr. 21).

Here, the Court will not remand this case due to the ALJ's treatment of the VA's 100% disability evaluation. As Defendant correctly notes, Plaintiff did not submit the entire VA ratings decision, which would have explained the basis of the VA's decision, but only a letter notifying Plaintiff that he had been assigned a "combined evaluation of 100 percent" by the VA. (Tr. 672). Nevertheless, the ALJ acknowledged the VA's 100% disability finding in his opinion and gave great weight to the opinion of Plaintiff's VA psychiatrist who opined that Plaintiff was disabled. In this way, the ALJ implicitly gave great weight to the VA disability evaluation for the closed period from December 16, 2009, through August 16, 2011, a period of time encompassing the VA's determination.

The ALJ found that Plaintiff had a medical improvement as of August 17, 2011, a finding that Plaintiff does not challenge on appeal. Implicit in the ALJ's finding of improvement is that the VA's 100% disability determination no longer reflected Plaintiff's RFC and is entitled to little weight post-improvement. Remanding this case to have the ALJ specifically state the weight he gave to the VA's determination would serve no purpose in light of the ALJ's treatment of the VA records. Accordingly, the Court finds that the ALJ did not err in not specifically according great weight to the VA's determination during Plaintiff's closed period of disability or after Plaintiff's medical improvement.

### III.   Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 25, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties